**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

RORY BROWN, ROSHANE POWELL, ROMARIO POWELL, ANDREW MORGAN, MICKEL KELLY, REYNARD MORRIS, GAREY MILLS, GARRICK ROBINSON, MARIO TEAPE and CRAIG LYNCH, on behalf of themselves, individually, and on behalf of all others similarly-situated,

              Plaintiffs,

          -against-

CHIEF FIRE PREVENTION & MECHANICAL CORP., and FRANK MITAROTONDA, Individually,

              Defendants.

_____

Docket No.:

**COMPLAINT**

**PLAINTIFFS DEMAND
TRIAL BY JURY**

Plaintiffs, by their attorneys, SCHWAB & GASPARINI PLLC., allege upon knowledge to themselves and upon information and belief as to all other matters as follows:

**PRELIMINARY STATEMENT**

1.      This action is brought pursuant to the Fair Labor Standards Act, as amended, ("FLSA"), 29 U.S.C. §§ 201, et. seq., and 216(b), 29 C.F.R. § 785.38, New York Labor Law ("NYLL") Article 19 § 663, NYLL Article 6 § 195, to recover (a) unpaid overtime compensation, (b) unpaid minimum wages, (c) liquidated damages, (d) pre-judgment and lost judgment, and other implementing and regulatory violations for wages owed to Plaintiffs by CHIEF FIRE PREVENTION & MECHANICAL CORP. and FRANK MITAROTONDA, Individually, and/or any related entities ("Defendants").

2.      Plaintiffs further allege that, pursuant to the New York Labor Law, they are entitled to recover from Defendants:

(a) Unpaid minimum wages,

(b) Unpaid overtime compensation,

(c) Unpaid "spread of hours" premium for each day that the work shift exceeded ten (10) hours,

(d) Liquidated and statutory damages, pursuant to the New York Labor Law and New York State Wage Theft Prevention Act,

(e) Pre-judgment and post-judgment interest, and

(f) Attorneys' fees and costs.

3.      Defendants jointly own and/or operate several companies that perform cleaning services, installations and or fire safety services.

4.      Since July 2009 and, upon information and belief, continuing through the present, Defendants have engaged in a policy and practice of requiring Plaintiffs and other similarly situated employees to regularly work in excess of forty (40) hours per week without providing minimum wage and overtime compensation for all hours worked as required by applicable Federal and State law.

5.      Beginning in approximately February 2005 and, upon information and belief, continuing through the present, Defendants have engaged in a policy and practice of: (1) failing to pay overtime compensation; (2) failure to pay spread of hours compensation, (3) failure to pay wages; (4) improper wage deductions, (5) failure to provide uniform maintenance pay, and (6) failing to pay minimum wages.

6.      Upon information and belief, Plaintiff's are all of Jamaican descent and it is firmly believed that Defendant, FRANK MIRATROTONDA has a profound distaste for individuals of Jamaican descent and that these actions are directly related to Plaintiffs' beliefs that these actions are related to that.

7.      Plaintiffs have initiated this action seeking for themselves and all similarly situated employees all compensation, including overtime compensation, that they were deprived of, plus interest, liquidated damages, attorneys' fees and costs.

## JURISDICTION

8.      Jurisdiction of this Court is invoked pursuant to FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331 and 1337. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 of the claims brought under plaintiffs' State Law claims.

9.      The statute of limitations under FLSA, 29 U.S.C. § 255(a), for willful violations, is three (3) years.

10.      The statute of limitations under NYLL §198(3) is six (6) years.

## VENUE

11.      Venue for this action in the Southern District of New York under 28 U.S.C. § 1391(b) is appropriate because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York.

## THE PARTIES

12.      Plaintiff RORY BROWN ("Brown") is an individual who is currently a resident of the State of New York and who was employed by Defendants as a grease duct cleaner from February 14, 2005, until 2014, and then as Director of Duct and Grease Cleaning "DDGC" in 2014 to October 2019 and in sales from 2019 until March 2020.

13.    Plaintiff ROSHANE POWELL ("Roshane Powell") is an individual who is currently a resident of the State of New York and who was employed by Defendants as a Grease Duct Cleaner, Supervisor and Driver from October 2016 until or around March 2020.

14.    Plaintiff ROMARIO POWELL ("Romario Powell") is an individual who is a resident of the State of New York and who was employed by Defendants as a Supervisor for various grease duct cleaners from October 2016 until or around June 22, 2020.

15.    Plaintiff ANDREW MORGAN ("Morgan") is an individual who is currently a resident of the State of New York and who was employed by Defendants a maintenance cleaner from 2007 until or around April of 2020.

16.    Plaintiff MICKEL KELLY ("Kelly") is an individual who is currently a resident of the State of New York and who was employed by Defendants as a Grease Duct Technican from 2017 until or around 2020.

17.    Plaintiff REYNARD MORRIS ("Morris") is an individual who is currently a resident of the State of New York and who was employed by Defendants as Project Manager from March 2015 until August 20, 2019.

18.    Plaintiff GAREY MILLS ("Mills") is an individual who is currently a resident of the State of New York and who was employed by Defendants as a Supervisor for various grease duct cleaners from February 2006 until or around March 2, 2020.

19.    Plaintiff GARRICK ROBINSON ("Robinson") is an individual who is currently a resident of the State of New York and who was employed by Defendants as a Maintenance Cleaner from November 2015 until or around January 2020.

20.    Plaintiff MARIO TEAPE ("Teape") is an individual who is currently a resident of the State of Connecticut and who was employed by Defendants as a Supervisor for various grease duct cleaners from 2015 until or around January 2020.

4

21.     Plaintiff CRAIG LYNCH ("Lynch") is an individual who is currently a resident of the State of Connecticut and who was employed by Defendants as a Field Supervisor from 2009 until or around April 2019.

22.     Upon information and belief, Defendant CHIEF FIRE PREVENTION & MECHANICAL CORP., (CFP) is a domestic business corporation organized and existing under the laws of the State of New York, with its principal place of business at 10 West Broad St., Mount. Vernon, New York 10552.

23.     Upon information and belief, Defendant FRANK MITAROTONDA is a resident of St. John County, Florida residing at 3815 Wahoo Drive, Saint Augustine, Florida 32084 and has a principal place of business at 10 West Broad St., Mount Vernon, New York 10552 and is, and at all relevant times was, an officer, director, president, vice president, CEO, and/or owner of Corporate Defendants.

24.     Upon information and belief, Defendants' annual gross volume of sales made or business done is not less than $500,000, both individually and in the aggregate.

## FACTS

25.     Since at least February 2005, Defendants employed Plaintiffs and other similarly situated employees as drivers, grease duct cleaners, technicians, and other non-exempt positions.

26.     Defendants exercise extensive control over the means by which Plaintiffs and other similarly situated employees performed their job duties.

### Plaintiff Brown

27.     Defendants employed Plaintiff Brown as a grease duct cleaner from February 14, 2005 until 2014, and then as Director of Duct and Grease Cleaning "DDGC" in 2014 to October 2019 and in sales force from 2019 until March 2020.

28.    From approximately 2014 to 2019 Plaintiff Brown worked as a Director of Duct and Grease Cleaning "DDGC".

29.    As a DDGC, Plaintiff Brown was not paid for all the hours that he performed work for Defendants, including those hours before and after his shift performing job duties for Defendants.

30.    Plaintiff Brown typically had to return to various job sites to ensure compliance and completion of all tasks.

31.    Plaintiff Brown was not compensated for the return to various job sites.

32.    Defendants typically failed to compensate Plaintiff Brown for the time he spent ensuring compliance at other job-sites including return to various field locations even on weekends or off-hours.

33.     Plaintiff Brown was typically not paid any over-time between three (3) and six (6) hours per week.

34.    Throughout his employment with Defendants, Plaintiff Brown typically worked five days per week for approximately 11 hours each day for a total of approximately 55 to 65 hours per week.

35.    Plaintiff Brown was typically only compensated for between 40 hours per week.

36.    Plaintiff Brown regular rate of pay was $30.00 per hour.

**Plaintiff Roshane Powell**

37.    Defendants employed Plaintiff Roshane Powell as Grease Duct Cleaner, Supervisor and Driver from approximately October 2016 until or around January 22, 2022.

38.    From approximately March 2017 to January 2020, Plaintiff Roshane Powell was a Supervisor and Driver.

39.    As a driver, Plaintiff Roshane Powell was not paid for all the hours that he performed work for Defendants, including those hours before and after his shift performing job duties for Defendants.

40.    As a driver, Plaintiff Roshane Powell typically traveled from his home to Defendants' principal place of business to pick up a company vehicle each morning.

41.    Upon arrival to Defendants' principal place of business, Plaintiff Roshane Powell, was responsible for loading the necessary equipment for the day's assignments and filling out the appropriate paperwork regarding the job assignments.

42.    Before being clocked in for his scheduled shift, Plaintiff Roshane Powell typically loaded the tools, filled out the necessary paperwork, secured the vehicle, and then drove to the homes of the other cleaners or helpers to pick them up.

43.    Plaintiff Roshane Powell was typically only compensated by Defendants from the time he reached the other Grease Duct Cleaner's residence.

44.    At the end of each day, Plaintiff Roshane Powell was required to take the Grease Duct Cleaners back to their residence and perform other job duties.

45.    After dropping off the helpers and after being clocked out, Plaintiff Roshane Powell was required to fuel up the company vehicle, unload the tools from the vehicle, meet with supervisors, return the vehicle, and fill out the appropriate paperwork.

46.    Defendants typically failed to compensate Plaintiff Roshane Powell for the time he spent unloading tools, fueling the vehicle, storing the tools, picking up and dropping off the helpers, and meeting with supervisors.

47.    Plaintiff Roshane Powell was typically not paid any over-time between three (3) and five (5) hours per week.

48.     Throughout his employment with Defendants, Plaintiff Roshane Powell typically worked five days per week for approximately 11 hours each day for a total of approximately 55 to 65 hours per week.

49.     Plaintiff Roshane Powell was typically only compensated for between 45 and 55 hours per week.

50.     Plaintiff Muniz's regular rate of pay was between $12.00 and $18.00 per hour.

**Plaintiff Romario Powell**

51.     Defendants employed Plaintiff Romario Powell as a Supervisor from October 2016 until or around June 22, 2020.

52.     From approximately 2016 to 2020 Plaintiff Romario Powell worked as a Supervisor.

53.     As a Supervisor, Plaintiff Romario Powell was not paid for all the hours that he performed work for Defendants, including those hours before and after his shift performing job duties for Defendants.

54.     Plaintiff Romario Powell was not compensated for his various job sites while employed by the defendants.

55.     Defendants typically failed to compensate Plaintiff Romario Powell for the time he spent as Supervisor for the Grease Duct Cleaners.

56.     Plaintiff Romario Powell once completed a 75 hour work week and was only compensated for 50 hours. The following week Plaintiff Romario Powell was retro-actively paid 20 hours. The remaining 5 hours have been unpaid.

57.      Plaintiff Romario Powell was typically not paid any over-time between three (3) and five (5) hours per week.

8

58.     Throughout his employment with Defendants, Plaintiff Romario Powell typically worked five days per week for approximately 11 hours each day for a total of approximately 55 to 65 hours per week.

59.     Plaintiff Romario Powell was typically only compensated for between 40 hours per week.

60.     Plaintiff Romario Powell regular rate of pay was $15.00 per hour.

**Plaintiff Morgan**

61.     Defendants employed Plaintiff Morgan as a Maintenance Cleaner from 2007 until April 2020.

62.     From approximately 2007 to 2020 Plaintiff Morgan worked as a Maintenance Cleaner.

63.     As a Maintenance Cleaner, Plaintiff Morgan was not paid for all the hours that he performed work for Defendants, including those hours before and after his shift performing job duties for Defendants.

64.     Plaintiff Morgan was typically not paid any over-time between four (4) and five (5) hours per week.

65.     Throughout his employment with Defendants, Plaintiff Morgan typically worked five days per week for approximately 11 hours each day for a total of approximately 55 to 65 hours per week.

66.     Plaintiff Morgan was typically only compensated for between 40 hours per week.

67.     Plaintiff Brown regular rate of pay was $14.00 per hour.

**Plaintiff Mickel Kelly**

68.     Defendants employed Plaintiff Kelly as a Grease Duct Technician from 2017 until or around June 2020.

9

69.    From approximately 2017 to 2020 Plaintiff Kelly worked as a Grease Duct Technician.

70.    As a Grease Duct Technician, Plaintiff Kelly was not paid for all the hours that he performed work for Defendants, including those hours before and after his shift performing job duties for Defendants.

71.    Plaintiff Kelly was typically not paid any over-time between four (4) and five (5) hours per week.

72.    Throughout his employment with Defendants, Plaintiff Kelly typically worked five days per week for approximately 11 hours each day for a total of approximately 55 to 65 hours per week.

73.    Plaintiff Kelly was typically only compensated for between 40 hours per week.

74.    Plaintiff Kelly regular rate of pay was $13.00 between $14.00 per hour.

**Plaintiff Morris**

75.    Defendants employed Plaintiff Morris as a Project Manager from March 2015 until August 20, 2019.

76.    From approximately 2015 to 2019 Plaintiff Morris worked as a Project Manager.

77.    As a Project Manager, Plaintiff Morris was not paid for all the hours that he performed work for Defendants, including those hours before and after his shift performing job duties for Defendants.

78.    Upon arrival to Defendants' principal place of business, Plaintiff Morris, was responsible for loading the necessary equipment for the day's assignments and filling out the appropriate paperwork regarding the job assignments.

79.    Initially, upon accepting the job position as a Project Manager Morris was advised he would work five days a week for approximately 12 hours per day. However, throughout his employment with Defendants, Plaintiff Morris typically worked six days per week for approximately 14 to 16 hours each day for a total of approximately 84 to 96 hours per week.

80.    At times, Plaintiff, Morris was required to over night shifts in excess of 16 hours.

81.    Plaintiff Morris was typically only compensated for base salary subject to a five day a week schedule for approximately 12 hours..

82.    Plaintiff Morris regular salary was $120,000.00 annually, he was not compensated for any excess hours.

**Plaintiff Mills**

83.    Defendants employed Plaintiff Mills as a Supervisor from February 2006 until or around March 2, 2020.

84.    From approximately 2006 to 2020 Plaintiff Mills worked as a Supervisor.

85.    As a Supervisor, Plaintiff Mills was not paid for all the hours that he performed work for Defendants, including those hours before and after his shift performing job duties for Defendants.

86.    Plaintiff Mills was typically not paid any over-time between four (4) and five (5) hours per week.

87.    Throughout his employment with Defendants, Plaintiff Mills typically worked five days per week for approximately 11 hours each day for a total of approximately 55 to 65 hours per week.

88.    Plaintiff Mills was typically only compensated for between 40 hours per week.

89.    Plaintiff Mills regular rate of pay was between $16.00 per hour.

11

**Plaintiff Robinson**

90.    Defendants employed Plaintiff Robinson as a Maintenance Cleaner from November 2015 until January 2020.

91.    From approximately 2015 to 2020 Plaintiff Robinson worked as a Maintenance Cleaner.

92.    As a Maintenance Cleaner, Plaintiff Robinson was not paid for all the hours that he performed work for Defendants, including those hours before and after his shift performing job duties for Defendants.

93.    Plaintiff Robinson was typically not paid any over-time between five (5) and six (6) hours per week.

94.    Throughout his employment with Defendants, Plaintiff Robinson typically worked five days per week for approximately 11 hours each day for a total of approximately 55 to 65 hours per week.

95.    Plaintiff Robinson was typically only compensated for between 40 hours per week.

96.    Plaintiff Robinson regular rate of pay was between $10.00 and 12.00 per hour.

**Plaintiff Teape**

97.    Defendants employed Plaintiff Teape as a Supervisor from 2015 until January 2020.

98.    From approximately 2015 to 2020 Plaintiff Teape worked as a Supervisor.

99.    As a Supervisor, Plaintiff Teape was not paid for all the hours that he performed work for Defendants, including those hours before and after his shift performing job duties for Defendants.

100.    Plaintiff Teape was typically not paid any over-time between four (4) and five (5) hours per week.

101.    Throughout his employment with Defendants, Plaintiff Teape typically worked five days per week for approximately 11 hours each day for a total of approximately 55 to 65 hours per week.

102.    Plaintiff Teape was typically only compensated for between 40 hours per week.

103.    Plaintiff Teape regular rate of pay was $17.00 per hour.

**Plaintiff Lynch**

104.    Defendants employed Plaintiff Lynch as a Field Supervisor from 2009 until April 2019.

105.    From approximately 2009 to 2019 Plaintiff Lynch worked as a Field Supervisor.

106.    As a Field Supervisor, Plaintiff Lynch was not paid for all the hours that he performed work for Defendants, including those hours before and after his shift performing job duties for Defendants.

107.    Plaintiff Lynch was typically not paid any over-time between four (4) and five (5) hours per week.

108.    Plaintiff Lynch would complete his assigned work tasks by Defendants at various job-sites and would not be paid for his compliance at the job site.

109.    Plaintiff Lynch was not compensated for approximately (2) two job site completions.

110.    Throughout his employment with Defendants, Plaintiff Lynch typically worked five days per week for approximately 11 hours each day for a total of approximately 55 to 65 hours per week.

111.    Plaintiff Lynch was typically only compensated for between 40 hours per week.

112.    Plaintiff Lynch regular rate of pay was between $17.00 per hour.

113.    Defendant, FRANK MITAROTONDA, is an owner, director, supervisor, proprietor and/or managing agent of CHIEF FIRE PREVENTION & MECHANICAL CORP., who actively participates in the day to day operations of the company, and acted intentionally and maliciously and is an employer, pursuant to the FLSA 29 U.S.C. §203(d) and the regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law §2 and the regulations thereunder, and is jointly and severally liable with CHIEF FIRE PREVENTION & MECHANICAL CORP.

114.    The individual defendant jointly exercises control over the terms and condition of each employee's employment in that they have the authority to and do in fact: (a) hire and fire the company's employees; (b) determine the employee's rates of pay, (c) determine the method by which each employee will be paid, (d) determine the work, the employee's work schedules and hours, (e) supervising control of the work of employees, and (f) create and maintain employment records.

115.    Upon information and belief, at least within each of the three most recent years relevant to the allegations herein, the defendants, jointly and collectively, were, and continued to be an "enterprise engaged in commerce" within the meaning of the FLSA, in that it (a) has and has had employees engaged in commerce, or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (b) has and has had an annual gross volume of sale of not less than Five Hundred Thousand Dollars ($500,000.00).

## CLASS ALLEGATIONS

116.    This action is properly maintainable as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), and a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

117.    This action is brought on behalf of Plaintiffs and a class consisting of similarly situated employees who worked for Defendants as supervisors, laborers, helpers and other non-exempt positions.

118.    Plaintiffs and other potential members are all victims of the Defendants' common policy and/or plan to violate the FLSA and provisions of the NYLL by failing to pay wages and earned overtime wages as a result of Defendants' improper charges of expenses and withholding of wages from Plaintiffs and others similarly situated.

119.    The questions of law and fact common to the putative class predominate over any questions affecting only individual members. These questions of law and fact include, but are not limited to, (1) whether Defendants employed the Collective Action Members within the meaning of the FLSA; (2) whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Collective Action Members; (3) whether Defendants failed to pay Plaintiffs and members of the putative class all earned wages; (4) whether the Defendants failed to pay overtime wages, at the rate of one and one half times regular rate of pay, for all hours worked in excess of 40 hours in any given week in violation of federal and state law; (5) whether Defendants made deductions to Plaintiffs and other similarly situated employees which were improperly withheld from or charged against Plaintiffs' earned wages; and (6) whether Defendants failed to compensated Plaintiff and other similarly situated employees the uniform maintenance pay.

120.    Plaintiffs and potential plaintiffs who elect to opt-in as part of the collective action are all victims of the Defendants' common policy and/or plan to violate the FLSA by failing to provide overtime wages, at the rate of one and one-half times the regular rate of pay, for all time worked in excess of 40 hours in any given week pursuant to 29 U.S.C. § 207.

121.    Plaintiffs bring this action individually and as class representatives on behalf of themselves and all other current and former non-exempt employees who have been or employed by defendants through the end of the "opt-in" period, as ultimately set by the Court,  (see "Collective Action"), and who were compensated at rates less than time and one-half for all hours worked in excess of 40 hours per work week, and who were not paid minimum wage. (See "Collective Action Members.")

122.    Upon information and belief, the Collection Action Class is so numerous that joinder of all members is impracticable.  Although the precise numbers of such persons is unknown, and the fact upon which the calculation of that number are presently within the full control of the defendants, upon information and belief, there are more than 20 Collection Action members who work for defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims.  Therefore, plaintiffs submit that this matter should be certified as a Collective Action under the FLSA, 29 U.S.C. § 216(b).

123.    Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the field of employment law and class action litigation.  Plaintiffs have no interests that are contrary to or in conflict with those members of this Collective Action.

124.    This action should be certified as a Collective Action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with individuals of the class that would in a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

16

125.    A Collective Action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impractical.  Furthermore, inasmuch as the damages suffered by individual Collective Action members may be small, the expense and burden of individual litigation make it virtually impossible for the members of the collective Action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a Collective Action.

126.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of the Collective Action.

127.    Plaintiffs and others similarly situated have been substantially damaged by defendants' wrongful conduct.

**CLAIMS**

**COUNT I**
**VIOLATION OF THE FLSA**

128.    The plaintiffs repeat and reallege each and every other allegation contained above as if more fully set forth at length herein.

129.    Defendants and related entities are employers, within the meaning contemplated, pursuant to 29 U.S.C. § 203(d) and case law interpreting the same.

130.    Defendants are employers of Plaintiffs and all putative class members.

131.    Plaintiffs would regularly report to the same agents and/or supervisors of the Defendants and receive instructions on which job site to work at and what tasks to perform.

132.     Upon information and belief, Defendant FRANK MITORONDA was at all times the owner and/or manager of  CHIEF FIRE PREVENTION., ("Corporate Defendants") and all related entities, and: (1) had the power to hire and fire Plaintiffs or similarly situated workers; (2) supervised and controlled Plaintiffs and similarly situated workers' work schedules and the work environment;

(3) determined the rate and method of payment of Plaintiffs and similarly situated workers; and (4) maintained employment records for the entity regarding Plaintiffs and similarly situated workers.

133.    Plaintiffs, and those individuals similarly situated, are employees, within the meaning contemplated, pursuant to 29 U.S.C. §203(e).

134.    Pursuant to 29 U.S.C. § 207, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty [40] hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

135.    Plaintiffs, and, upon information and belief, those individuals similarly situated, consistently worked in excess of forty (40) hours per week, regularly working 50-75 hours per week.

136.    Plaintiffs regularly worked between 50 and 75 hours per week.

137.    Plaintiffs were not paid for these hours and they would not be reflected on this paychecks.

138.    Plaintiffs, and those individuals similarly situated, upon information and belief, did not receive overtime compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in any given week.

139.    Consequently, by failing to pay Plaintiffs, and those individuals similarly situated, all their overtime compensation, Defendants violated the FLSA 29 U.S.C. § 207.

140.    Upon information and belief, the failure of the Defendants to pay overtime compensation was willful.

141.    Plaintiffs and other similarly situated workers are not exempt from overtime payment pursuant to the FLSA.

142.    As a result of the defendants' failure to properly record, report, credit and/or compensate its employees, including plaintiffs and the Collective Action Members, defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment, in violation of the FLSA, 29 U.S.C. § 201, et. seq., including 29 U.S.C. § 211(c) and § 215(a).

143.    Defendants failed to properly disclose or apprise plaintiffs and the Collective Action Members of their rights under the FLSA.

144.    As the direct and proximate result of the defendants' violation of the FLSA, plaintiffs and the Collective Action Members are entitled to liquid damages pursuant to the FLSA.

145.    Due to the intentional, willful, and unlawful acts of defendants, plaintiffs and the Collective Action Members suffered damages in an amount not presently ascertainable of unpaid overtime compensation, an equal amount of liquidated damages, and prejudgment interest thereon.

## COUNT II
## VIOLATION OF THE NEW YORK LABOR LAW

146.    The plaintiffs repeat and reallege each and every other allegation contained above as if more fully set forth at length herein.

147.    Defendants and related entities are employers, within the meaning contemplated, pursuant to NYLL Article 19 § 651(6) and the supporting New York State Department of Labor Regulations.

148.    Plaintiffs are employees within the meaning contemplated, pursuant to NYLL Article 19 § 651(5) and the supporting New York State Department of Labor Regulations.

149.    Defendants are subject to the regulations proscribed in the "Miscellaneous Industries and Occupations" under NYCRR Part 142.

150.    12 NYCRR Part 142 require that an employer pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate of pay.

151.    NYLL Article 19 § 663, provides that "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees."

152.    Plaintiffs, and, upon information and belief, those individuals similarly situated, consistently worked in excess of forty (40) hours per week, regularly working 50 to 75 hours per week.

153.    Plaintiffs, and those individuals similarly situated, did not receive overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in any given week.

154.    Plaintiffs' paystubs were missing hours, including those from the beginning and ends of their shifts.

155.    Consequently, by failing to pay to Plaintiffs, and those individuals similarly situated, all their overtime compensation, Defendants violated NYLL Article 19 § 663 and 12 NYCRR Parts 142.

156.    Upon information and belief, Defendants' failure to pay overtime compensation was willful.

157.    Defendants failed to properly disclose or apprise plaintiffs of their rights under the New York Labor Law.

158.    Defendants failed to furnish plaintiffs with a statement of every payment of wages, listing gross payment of wages, deductions, and net wages, in contravention of NYLL § 195(3), and the NYS Department of Labor Regulations §142-2.7.

20

159.    Defendants failed to keep true and accurate records of hours worked by each employee, the wages paid for all employees, and other similar information in contravention of NYLL §661.

160.    Defendants failed to establish, maintain, and preserve for not less than six years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the NYLL §194(4) and the NYS Department of Labor Regulations §142-2.6.

161.    Due to the defendants' NYLL violations, plaintiffs are entitled to recover from defendants unpaid minimum wages and unpaid overtime compensation, reasonable attorneys' fees and costs and disbursements of this action pursuant to NYLL § 663(1) et., al., and § 198.

162.    Plaintiffs are also entitled to liquidated damages, pursuant to NYLL § 663(1), as well as statutory damages pursuant to the NYS Wage Theft Prevention Act.

163.    By the foregoing reasons, Defendants have violated NYLL Article 19 § 663 and 12 NYCRR Parts 142 and are liable to Plaintiffs in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## COUNT III
## IMPROPER WAGE DEDUCTIONS

164.    The plaintiffs repeat and reallege each and every other allegation contained above as if more fully set forth at length herein.

165.    The compensation paid by Defendants to plaintiffs and others similarly situated individuals constituted "wages" within the meaning of Labor Law §§ 190(1) and 193.

166.    Other than deductions required by law, government rules or regulations (e.g., payroll taxes, child support orders, or wage garnishments), New York Law §193 prohibits an employer from making any deductions from and employee's wages, except those which the employee expressly authorizes in writing and "are for the benefit of the employee."

167.    Section 193 of the Labor Law expressly limits such "authorized deductions" to amounts for "insurance premiums, pension or health and welfare benefits, contribution to charitable organizations, payments for United States bonds, payments for dues or assessments to a  labor organization, and similar payment for the benefit of the employee." (Labor Law §193(1)(b)).

168.    Defendants deducted amounts directly from the wages of Plaintiffs and others similarly situated, which do not fall within the authorized deductions, including but not limited to, deductions for broken items and tools.

169.    Defendants also failed to reimburse Plaintiffs for expenses that they were required to incur as employees for Defendants' business operations, including required job training.

170.    Defendants' ongoing deductions of amounts not constituting authorized deductions from the wages of plaintiffs and Class members constitutes a violation of Labor Law §193(1).

171.    By the foregoing reasons, Defendants have violated NYLL§ 193, and are liable to Plaintiffs and other members of the putative class in an amount to be determined at trial, plus interest, liquidated damages, attorney's fees, and costs.

## COUNT IV
## NEW YORK SPREAD OF HOURS LAW

172.    The plaintiffs repeat and reallege each and every other allegation contained above as if more fully set forth at length herein.

173.    12 NYCRR §142-2.18 requires that "[a]n employee shall receive on hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which…the spread of hours exceeds 10 hours [in a day]."

174.    Defendants required that the Plaintiffs and other similarly situated worked more than 10 hours in a day.

175.    Defendants did not pay Plaintiffs an additional hour's pay at the basic minimum hourly wage rate when Plaintiffs worked shifts that spread out more than 10 hours in a day.

176.    Upon information and belief, Defendants failed to pay spread of hours compensation to other similarly situated individuals when required to do so by law.

177.    Consequently, by failing to pay the Plaintiffs and others similarly situated an additional hour's pay at the basic minimum hourly wage rate when Plaintiffs and other similarly situated employees, worked more than 10 hours in day, Defendants violated 12 NYCRR § 142-2.18.

178.    Upon information and belief, Defendants' failure to pay spread of hour's compensation to the Plaintiffs and similarly situated employee was willful.

179.    By the foregoing reasons, Defendants have violated 12 NYCRR § 142 et seq. and are liable to Plaintiffs and similarly situated employees in an amount to be determined at trial, plus interest, attorney's fees, and costs, pursuant to the above cited Labor Law and regulatory sections.

## COUNT V
## HOSTILE WORK ENVIRONMENT IN
## VIOLATION OF THE NYS HUMAN RIGHTS LAW

180.    The plaintiffs repeat and reallege each and every other allegation contained above as if more fully set forth at length herein.

181.    The New York State Human Rights Law forbids an employee to discriminate against an employee on account of that employee's racial background.

182.    Upon information and belief, the defendants acted with negative reaction towards all of the plaintiffs, as they are of Jamaican descent.

183.    Upon information and belief, in approximately December of 2019, the defendant FRANK MITAROTONDA, stated in sum and substance that "I am getting rid of all Jamaicans because they are causing nothing but problems."  Shortly after making this statement, the defendant FRANK MITAROTONDA, stated in reference to the plaintiffs that "we need to change the complexion of the Company" and that "we never have trouble with the other guys".

184.    Upon information and belief, the defendants herein discriminated against plaintiffs in the terms and conditions of their employment on the basis of their race, in violation of the New York State Human Rights Law.

185.    As described above, Defendants have discriminated against Plaintiffs and the Proposed Class on the basis of race and/or color in violation of the NYSHRL by (i) discriminatorily denying Proposed Class members positions in employment, and (ii) discriminatorily subjecting them to discriminatory retention practices and/or termination decisions.

186.    Defendants have fostered, condoned, accepted, ratified and/or otherwise failed to prevent or remedy discriminatory conduct due to race and/or color. Defendants have actually participated in and aided and abetted the discriminatory conduct of the Defendants. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYSHRL,

Plaintiffs and the Proposed Class have suffered, and continue to suffer, economic damages, loss of opportunity, loss of reputation and mental anguish for which they are entitled to an award of damages.

187.    Defendants' unlawful discriminatory actions constitute reckless, malicious, willful and wanton violations of NYSHRL for which Plaintiff and the Proposed Class are entitled to an award of punitive damages.

188.    As a result of the foregoing, defendants violated the New York State Human Rights Law, and plaintiffs have suffered injuries as a result of the foregoing.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members, respectfully request that this Court grant the following relief:

(a) An award of unpaid minimum wages due under the New York Labor Law;

(b) An award of unpaid overtime compensation due under the FLSA and New York Labor Law;

(c) An award of unpaid "spread of hours" premium due under the New York Labor Law;

(d) An award of liquidated damages as a result of defendants' failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

(e) An award of liquidated damages as a result of defendants' failure to pay minimum wages and overtime compensation pursuant to the New York Labor Law and the New York Wage Theft Prevention Act;

(f) An award of statutory damages pursuant to the New York State Wage Theft Prevention Act;

(g) An award of pre-judgment and post-judgment interest;

(h) An award of costs and expenses associated with this action, together with reasonable attorneys' and experts' fees;

(i) An award of damages for an amount to be determined at trial, plus pre-judgment interest to compensate plaintiffs for monetary and economic damages, including but not limited to, compensation for emotional distress, humiliation, embarrassment, stress, anxiety, loss of self-esteem, self-confidence and personal dignity, emotional pain and suffering, and any other physical and mental injuries, for violations of the New York State Human Rights law.

(j)  An award of punitive damages, and

(k)  Such other and further relief as this Court determines to be just and proper.

Dated:  White Plains, New York
April 25, 2022

Respectfully submitted,

SCHWAB & GASPARINI PLLC

s/2207827
**JAMES A. RESILA (s/ 2207827)**
jresila@schwabgasparini.com
Attorneys for Plaintiffs
222 Bloomingdale Road, Suite 200
White Plains, New York 10605
(914) 304-4353
File No.: 116.119